# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TONKUBO SHOMIDE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 03-1019-SLR |
| | ) |
| ILC DOVER, INC., | ) |
| | ) |
| Defendant. | ) |

Tonkubo Shomide, New Castle, Delaware. Plaintiff, pro se.

David Allen Denham, Esquire, Bifferato Gentilotti LLC, Wilmington, Delaware. Counsel for Defendant, now known as ILC Dover, L.P.

## MEMORANDUM OPINION

Dated: November 9 , 2007
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On November 7, 2003, Tokunbo Shomide ("plaintiff") filed a pro se complaint alleging racial discrimination under Title VII of the Civil Rights Act of 1964. Plaintiff was given leave to file his amended complaint on March 22, 2007. Plaintiff alleges that ILC Dover, Inc., now known as ILC Dover, L.P. ("defendant"), discriminated against him when it terminated his employment on account of his race, color, and national origin. (D.I. 1, ¶ 11) Currently before the court are several pending motions filed by plaintiff and defendant including motions for default judgment, motions for summary judgment, and motions on discovery issues. (D.I. 48, 65, 66, 67, 75, 87, 88) For the reasons discussed below, the court will deny the motions for default judgment, deny the motion for extension of time, deny in part and grant in part the motion to compel, and grant the motion to quash. (D.I. 48, 65, 66, 67, 87) The court will grant defendant's motion for partial summary judgment, and the court will deny plaintiff's motion for summary judgment. (D.I. 75, 88)

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, a black male of African origin, was employed by defendant from March 9, 1998 until his lay-off on April 8, 2002. (D.I. 35, ¶¶ 5, 26) He was hired as a senior design engineer. (D.I. 90, Ex. 2) He alleges that while employed by defendant, he was constantly harassed and mocked by his white co-workers because of his accent, demoted without cause, not considered for equal training or educational opportunities, disciplined when other employees who committed the same acts were not, and kept under constant observation by his supervisors. Plaintiff filed a charge of discrimination

with the EEOC on September 23, 2002. (D.I. 90, Ex. 37) Count one of the amended complaint alleges retaliation under Title VII, 42 U.S.C. § 2000e(2)(a); count two alleges race discrimination in violation 42 U.S.C. § 2000e-2(a) and 3(a); count three alleges race discrimination/failure to promote; and count four alleges breach of the covenant of good faith and fair dealing. (D.I. 35, 9-11) Plaintiff seeks compensatory and punitive damages, back pay, front pay,[1] attorney fees, costs of litigation, and interest.

## III. PENDING MOTIONS

### A. Plaintiff's Motions for Entry of Default Judgment

#### 1. Standard of Review

Entry of default judgment is a two-step process. Fed. R. Civ. P. 55(a), (b). A party seeking to obtain a default judgment must first request that the clerk of the court "enter . . . the default" of the party that has not answered the pleading or "otherwise defend[ed]" within the time required by the rules or as extended by court order. Fed. R. Civ. P. 55(a). Even if default is properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

#### 2. Discussion

Plaintiff has filed two motions for entry of default judgment. (D.I. 48, 65) The first motion seeks entry of default judgment because defendant did not file with the court a notice of plaintiff's deposition. (D.I. 48) The motion is frivolous and will be denied.

The second motion for entry of default judgment seeks default judgment on the

---

[1]Plaintiff does not seek reinstatement. (See D.I. 35, 11-12)

basis that defendant did not timely respond to plaintiff's discovery requests. (D.I. 65) As discussed above, entry of default occurs only after a party has not answered the complaint or otherwise defended against the claims. Rule 37 of the Federal Rules of Civil Procedure provides for sanctions when a party does not comply with discovery, but only after application to the court.[2] Fed. R. Civ. P. 37(a), (b), (c), (d). Defendant admittedly filed late responses to plaintiff's discovery requests. However, defendant's conduct is not so egregious as to warrant the imposition of sanctions in the form of entry of default judgment.

Plaintiff has not provided a rational basis for default judgment. Therefore, the court will deny plaintiff's motions for entry of default judgment. (D.I. 48, 65)

## B. Discovery Motions

### 1. Plaintiff's Motion to Amend Rule 16 Scheduling Order

Plaintiff moves the court to amend the Rule 16 scheduling order to extend all deadlines. (D.I. 66) The current deadlines have all expired. Discovery was to be completed on or before June 29, 2007, and summary judgment motions were to be served on or before July 30, 2007. (D.I. 45) Plaintiff seeks a three month extension because this is an "extremely work intensive case involving twelve defendants and various administrative officials." (D.I. 66) He also advises the court that defendant was late in responding to his discovery requests. Finally, plaintiff asks the court to consider

---

[2]Normally parties are required to engage in a good faith conference or attempt a conference in order to resolve discovery disputes. Fed. R. Civ. P. 37(a)(2)(B). The Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, however, exempt this requirement for pro se parties. D. Del. LR 7.1.1.

his health and financial constraints.

Defendant opposes the motion. It argues that there is only one named defendant, that plaintiff waited over three and one-half years after he filed his complaint to make his first discovery requests, and that plaintiff would not agree to its request for a two week extension to respond to plaintiff's discovery requests. (D.I. 71)

The court will deny the motion. Plaintiff has had ample time to complete his discovery. The court notes that the court docket contains numerous discovery requests and responses. Moreover, plaintiff will suffer no prejudice. He has filed a motion for summary judgment containing numerous exhibits and, although filed thirty days late, it will be considered by the court.

## 2. Plaintiff's Motion to Compel

### a. Background

Plaintiff moves the court to compel defendant to provide full and complete verified answers to interrogatories and requests for production of documents. (D.I. 67) Plaintiff argues that all of defendant's responses "have been very evasive, incomplete disclosure, answer and responses." (Id. at ¶ 17) Plaintiff argues that defendant did not label all its responses and was late in providing its responses. Plaintiff makes specific mention of only one request regarding documents related to the EEOC's investigation of his claim.

Defendant opposes the motion and argues that the court should not entertain it because it was filed on June 29, 2007, after the discovery deadline ended. (D.I. 86) Defendant advises that it served supplemental and amended responses to plaintiff's discovery request and identified which Bates labeled documents were responsive to

plaintiff's discovery requests.

### b. Standard of Review

Pursuant to Fed. R. Civ .P. 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim . . . of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter . . . . Relevant information need not be admissible at the trial if the discovery appears *reasonably calculated* to lead to the discovery of admissible evidence."  As to interrogatories, "[t]he party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories.  A shorter or longer time may be directed by the court or, in the absence of such an order, agreed to in writing by the parties subject to Rule 29."  Fed. R. Civ. P. 33(b)(3).  "All grounds for an objection to an interrogatory shall be stated with specificity.  Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown."  Id. at (b)(4).

Similarly, for requests for production of documents, "[t]he party upon whom the request is served shall serve a written response within 30 days after the service of the request.  A shorter or longer time may be directed by the court or, in the absence of such an order, agreed to in writing by the parties, subject to Rule 29."  Fed. R. Civ. P. 34(b).  Rule 34 does not provide for waiver of objection if responses are not timely filed.  "If a party . . . fails . . . to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is

-5-

pending on the motion may make such orders in regard to the failure as are just . . . ."
Fed. R. Civ. P. 37(d).

### c. Discussion

Defendant's answers to interrogatories were not timely filed. Therefore, pursuant
to Fed. R. Civ. P. 33(b)(4), the objections are waived. The court has reviewed
defendant's answers to interrogatories and notes that, despite its objections, it has
answered the interrogatories. (See D.I. 62, 73) Nevertheless, defendant is required to
fully answer the interrogatories to the extent it did not because of its objections.

Similarly, defendant did not timely file its response to the request for production
of documents. The court, however, has reviewed defendant's responses and
documents produced (D.I. 64, 79), observes that defendant has supplemented its
responses to the request, and attempted to accommodate plaintiff by providing all
documents requested and responding to all discovery issues raised by plaintiff.

The court will grant in part and deny in part plaintiff's motion to compel. The
motion to compel answers to interrogatories will be granted to the extent that defendant
has not fully answered the interrogatories. Defendant is not required to provide
answers protected by privilege. The motion to compel requests for production of
documents will be denied as moot.

### 3. Defendant's Motion to Quash

Defendant moves to quash discovery served on it by plaintiff on July 16, 2007.
(D.I. 87) The discovery consists of interrogatories in excess of the amount allowed by
the Federal Rules of Civil Procedure without leave of court and a second request for
production of documents. Defendant asks the court to quash the discovery requests on

-6-

the basis that they were filed after the close of discovery and plaintiff provided no basis for the late filing. Finally, defendant contends that it has produced all relevant, non-privileged documents relating to plaintiff's claims.

While not clear, it appears that plaintiff argues he did not receive documents in response to his discovery. (D.I. 92) Plaintiff continues to argue that defendant did not fully answer his first set of interrogatories and that is why he filed the second set of interrogatories. Plaintiff argues that he seeks information that he believes is relevant to significant legal and factual issues. Finally, he argues he will be unduly prejudiced if he does not receive the discovery requested in his second discovery request.

This case has been pending over four years, since September 2003. Plaintiff cannot escape the fact that he filed the second set of discovery requests outside the discovery deadline. Accordingly, the court will grant defendant's motion to quash.

## C. Motions for Summary Judgment

Defendant asks the court to grant it partial summary judgment on count four, the breach of the covenant of good faith and fair dealing claim, on the basis that plaintiff was an at-will employee, and on the damages issues of back and front pay on the basis that plaintiff is totally disabled and receives social security disability benefits. (D.I. 75, 76) Plaintiff moves for summary judgment on all counts on the basis that he has presented a prima facie case of discrimination and defendant cannot present a rational non-discriminatory reason for the actions taken against him. (D.I. 88)

### 1. Standard of Review

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

-7-

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue

of material fact as to whether the employer intentionally discriminated against the plaintiff." Blozis v. Mellon Trust of Delaware Nat'l Ass'n, 494 F. Supp. 2d 258, 267 (D. Del. 2007) (quoting Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987)).

## 2. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff and defendant both move for summary judgment on count four of the amended complaint. Defendant contends that it is entitled to summary judgment because plaintiff failed to allege facts sufficient to give rise to a cause of action for breach of the covenant of good faith and faith dealing under Delaware law. It argues that, because plaintiff was an at-will employee under Delaware law, he could be terminated without cause at any time. Defendant argues that there is no evidence of an express employment contract between it and plaintiff. It also argues that, even if plaintiff had properly alleged count four, he cannot sustain said action because count four does not fall within the four discrete claims for the implied covenant of good faith and fair dealing. Plaintiff argues that he should be granted summary judgment on count four and that defendant is "trying to hide behind an 'at-will employment' policy statement and handle termination any way [it] want[s]." (D.I. 88)

The presumption of at-will employment is a fixture of American law, and that presumption is followed in Delaware. E.I. Du Pont de Nemours & Co. v. Pressman, 679 A.2d 436, 443 (1996). Indeed, the general rule in Delaware is that employees are employed "at-will" and may be dismissed at any time without cause. See Merrill v. Crothall-American, Inc., 606 A.2d 96, 103 (Del.1992). The covenant of good faith and fair dealing limits at-will employment only in very narrow categories: (1) where the termination violated public policy; (2) where the employer misrepresented an important

fact and the employee "relied thereon either to accept a new position or remain in a present one"; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination. Lord v. Souder, 748 A.2d 393, 400 (Del. 2000) (citing E.I. DuPont de Nemours and Co. v. Pressman, 679 A.2d at 441-44).

Plaintiff was hired by defendant on March 9, 1998. There is nothing before the court to suggest that he entered into an employment contract with defendant. Contrary to plaintiff's position, the employee handbook is clear that plaintiff was hired as an at-will employee. As a general rule, an employee manual that does not set forth the terms, conditions, or duration of employment does not constitute an employment contract. Heideck v. Kent Gen. Hosp., 446 A.2d 1095, 1097 (Del. 1982). Defendant's employee handbook states at page two, "[n]othing in this handbook or in the policy manual should be construed to be anything other than an employment at-will relationship where either party may terminate the relationship at any time and for any reason." (D.I. 90, Ex. 24) Additionally, the manual does not provide that plaintiff will be employed for a definite period of time.

Plaintiff's breach of the implied covenant of good faith and fair dealing is based upon his allegations that defendant failed to promote him, denied him of educational opportunities, demoted him without cause, and discriminated against him because of his nationality and race. Plaintiff does not indicate under which theory he proceeds in count four. Nonetheless, it is clear that categories two and three, as discussed above, are inapplicable to the case.

It may be that plaintiff proceeds under a violation of public policy theory as set forth in category one inasmuch as he alleges he was terminated based upon his nationality and race.  Plaintiff's exclusive remedy for race discrimination in his employment, however, lies under the Delaware Discrimination Employment Statute, 19 Del. Code § 710, et seq.[3]  See Equal Employment Opportunity Comm'n v. Avecia, Inc., 151 Fed. Appx. 162, 165 (3d Cir. 2005); Yatzus v. Appoquinimink School Dist., 458 F. Supp. 2d 235, 248 (D. Del. 2006).  Hence, the Delaware Discrimination Employment Statute precludes recovery under a public policy theory.

Category four is also unavailing in plaintiff's quest for recovery.  Even if defendant gave plaintiff a false reason for his layoff, plaintiff may not recover if defendant did not actually falsify or manipulate employment records.  See Avecia, Inc., 151 Fed. Appx. at 165 (citing Williams v. Caruso, 966 F. Supp. 287, 291 (D. Del. 1997)). The evidence before the court does not support a finding that defendant falsified or manipulated plaintiff's employment records to create fictitious grounds for his termination.

Based upon the foregoing, the court will grant defendant's motion for partial

---

[3]It shall be an unlawful employment practice for an employer to:  (1) Fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin; or (2) Limit, segregate or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin.  19 Del. Code § 711(a).

-11-

summary judgment as a matter of law as to count four of the amended complaint, and will deny plaintiff's motion for summary judgment as to court four of the amended complaint.

### 3. Back Pay/Front Pay

Defendant moves for dismissal of plaintiff's damages claims for back pay from July 25, 2001 until April 8, 2002, and for front pay. Defendant contends dismissal of these claims is proper because the Social Security Administration ("SSA") found plaintiff totally disabled as of July 25, 2001. Defendant argues that plaintiff is not able to perform his duties as a senior design engineer and, therefore, could not have performed any job for the period after he left the defendant's employ. Plaintiff did not respond to this portion of defendant's motion for summary judgment. Nonetheless, the court will construe the facts in the light most favorable to plaintiff, the non-moving party.

Plaintiff filed his charge of discrimination on September 23, 2002. Pursuant to 42 U.S.C. § 2000e-5(g), back pay shall not accrue from a date more than two years prior to the date of filing the discrimination charge. Plaintiff filed his charge of discrimination on September 23, 2002. Hence, any back pay to which plaintiff may be entitled began to accrue on September 23, 2000.

On July 25, 2001, plaintiff sustained injuries as a result of a non-work related automobile accident. (D.I. 90, Ex. 72) He was employed by defendant at that time. (D.I. 77, A49) Plaintiff did not return to work until approximately four months following the accident. (Id. at A50). His return to work was part-time, four hours per day, five days per week, and he continued to work part-time until his lay-off in April 2002. (Id.)

On November 18, 2002, plaintiff filed a claim with the SSA seeking disability

-12-

benefits. (Id. at A6-9) A daily activities questionnaire that plaintiff submitted to the SSA stated that he could not "work for 5 minutes without feeling pain, breathing, discomfort on [his] knees, uncomfortable." (Id. at A10-14) Following a hearing before a social security administrative law judge ("ALJ"), it was determined that plaintiff had been disabled since July 25, 2001, and that he met the insured status requirements of social security through December 31, 2007. (Id. at A21-22) More specifically, the ALJ found that plaintiff's ". . . pain . . . would prevent him from sustaining even sedentary work activity on a regular and consistent basis, for an eight hour day, 40 hours a week, or other equivalent work schedule." (Id. at A19) The ALJ also determined that plaintiff is unable to perform his past relevant work. (Id. at A20)

Plaintiff testified during his deposition that he is unable to work due to his condition as a result of the July 25, 2001 automobile accident. (Id. at A69) Plaintiff also testified during his deposition that he was disabled, had not been employable subsequent to the July 25, 2001 automobile accident, and that he continued to receive social security disability benefits. (Id. at A49) Plaintiff explained that his injuries prevented him from performing the job he held when employed by defendant. (Id. at A49-50)

Plaintiff did not to respond to defendant's motion for partial summary judgment on this issue, nor did he submit evidence that he is able to return to work. "[A]s a general rule [an employment discrimination plaintiff] will not be allowed back pay during any periods of disability" and "an employer who has discriminated need not reimburse the plaintiff for salary loss attributable to the plaintiff and unrelated to the employment." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1101 (3d Cir. 1995); N.L.R.B. v.

-13-

Louton, Inc., 822 F.2d 412, 415 (3d Cir. 1987); Mason v. Association for Independent Growth, 817 F. Supp. 550, 554 (E.D. Pa. 1993). Plaintiff's disability is unrelated to his employment, and he has been found totally disabled by the SSA. Accordingly, he is not entitled to back pay from July 25, 2001, the day his total disability began, through April 8, 2002, the day of his lay-off.

Similarly, plaintiff's request for front pay must be dismissed since plaintiff continues to receive benefits for a disability that prevents him from being gainfully employed. See Soto v. Island Fin., Inc., 338 F. Supp. 2d 299, 302 (D.P.R. 2004); Hatter v. Fulton, No. 92 CIV. 6065(WK), 1997 WL 411623, at *6 (S.D.N.Y. July 21, 1997) (A plaintiff cannot collect front pay when she is disabled and unable to work, because front pay is an alternative to reinstatement and, therefore, is not available to one who cannot work); Bonura v. Chase Manhattan Bank, N.A., 629 F. Supp. 353, 362 (S.D.N.Y. 1986) (An award of front pay is made when reinstatement is neither possible nor practicable and the undisabled plaintiff has no "reasonable prospect of obtaining comparable alternate employment".). Moreover, the doctrine of judicial estoppel prevents plaintiff from telling the SSA that he is disabled and unable to work but later telling this court that he is entitled to front pay because he can perform his former job. DeGuiseppe v. Village of Bellwood, 68 F.3d 187, 191 (7th Cir. 1995). Given plaintiff's representation to the SSA that he is disabled and can no longer perform the position he held with defendant, he is estopped from claiming that he can now perform the same job.

Based upon the foregoing, the court will grant defendant's motion to dismiss plaintiff's damages claims for back pay from July 25, 2001 until April 8, 2002 and for front pay.

-14-

### 4. Title VII Claims

Plaintiff moves for summary judgment on the basis that he has established a prima facie case of discrimination with respect to all his claims. (D.I. 88)  Initially the court notes that plaintiff did not timely file his dispositive motion.  Nonetheless, the court will address the motion.  Inasmuch as plaintiff is the moving party, the court will construe the relevant facts in the light most favorable to defendant, the non-moving party.  Plaintiff's remaining claims include retaliation, race discrimination, and failure to promote due to race discrimination.[4]  Defendant responds that even if plaintiff made a prima facie showing with respect to his claims, there remain genuine issues of material fact that must be addressed by a jury.

#### a. Relevant Facts

Plaintiff was raised in Nigeria and moved to the United States in 1981. (D.I. 77, A45)  He became a U. S. citizen in 2005. (Id.)  Plaintiff was hired by defendant on March 9, 1998, to assist in the design of custom space suit gloves for NASA in a project entitled "Phase VI glove work." (D.I. 77, A3-4, A115)  It is plaintiff's understanding that Joseph Welch ("Welch"), supervisor of the CAD/CAE group, recommended him for the position. (D.I. 77, A80)  Plaintiff was laid off from his position on April 8, 2002. Following plaintiff's employment termination, he filed a charge of discrimination with the EEOC which alleged that: 1) he received less favorable performance reviews; 2) he was routinely mocked because of his heavy African accent; 3) he was not given salary

---

[4]Plaintiff added new theories of hostile work environment and constructive discharge in his motion for summary judgment.  These issues were not included in plaintiff's amended complaint and are not justiciable in this lawsuit.

-15-

increases similar to his white counterparts in 2000 and 2001; 4) he was routinely denied the opportunity to receive company sponsored educational enrichment classes; 5) his supervisors constantly watched him and yelled at him; 6) he was suspended for making too many telephone calls when he did not make any more than his white co-workers, but he was the only employee singled out and disciplined; 7) he was retaliated against when he was laid off but less senior co-workers were allowed to keep their jobs or were transferred to other projects; and 8) on February 28, 2002, he was listed as a designer rather than a senior design engineer. (D.I. 90, Ex. 37)

Plaintiff was subject to annual reviews while employed by defendant. He was reviewed by Welch. (D.I. 90, Exs. 7-15) Plaintiff testified during his deposition that on several occasions Welch used the words, "f---king African."[5] (D.I. 77, A59, A61) Plaintiff testified that he felt Welch always watched him, and that he was the only employee who was watched. (D.I. 77, A86) Defendant denies this occurred, but states that at times it was difficult to deal with plaintiff. (D.I. 90, Ex. 40) Plaintiff did not report any acts of discrimination until 2001 when, on one occasion, he told Ralph Weiss ("Weiss"), director of engineering, about Welch's comments. This occurred during a discussion of plaintiff's 2001 performance review.[6] (Id. at A63, A74, A76) Memoranda indicate that the discussion occurred on April 3, 2001. (D.I. 90, Exs. 18, 19) According

---

[5]Plaintiff testified that he told the EEOC about Welch's comments, but it was not "put down." (D.I. 77, A79) He further testified, however, that he did not submit this information in any documents he provided to the EEOC. (Id. at A80)

[6]Plaintiff testified that the conversation with Weiss took place shortly before the date that he was involved in a car accident. The accident occurred on July 25, 2001. (D.I. 77, A63)

to plaintiff, Weiss never took any action to stop Welch. (Id. at A77)

In its response to the EEOC, defendant indicates that plaintiff's performance was not at a high level of efficiency. (D.I. 90, Ex. 40) Defendant indicates that, in 2001, plaintiff was scheduled to receive a four percent raise, but it was reduced due to his performance. (Id.) Instead, plaintiff received a 2.5 percent increase in March of that year. (Id.)

Plaintiff testified that several of defendant's employees laughed at his accent and made fun of his speech. (Id. at A60, A72) According to defendant, it conducted an internal investigation in response to plaintiff's EEOC charge and found no evidence of the same. (D.I. 90, Ex. 40)

Plaintiff received a one day suspension from work for making personal long distance telephone calls. (D.I. 90 Ex. 40) A white co-worker was also suspended at the same time for making personal long distance telephone calls. (Id.) Plaintiff testified that the suspension of the white co-worker was a "cover up," that defendant was "actually trying to get him," and that it was the beginning of retaliation. (D.I. 77, A69)

Although plaintiff alleges that he was denied educational opportunities, he testified that he took advantage of the program. (D.I. 77, A69) Defendant confirms that plaintiff received more total training than any other employee in his group. (D.I. 90, Ex. 40)

Plaintiff alleges that an act of discrimination occurred in February 2002 when an organizational chart identified him as a designer, rather than a senior design engineer. (D.I. 90, Ex. 30) Defendant states that there was an error on the organizational chart, that plaintiff was reassured his job had not changed, and when the corporate

-17-

organizational chart was published on March 18, 2002, it showed plaintiff's job title as design engineer. (D.I. 90, Ex. 40)

According to defendant, work began to decline in mid-2001until the end of November 2002, because there was no more glove work scheduled. (D.I. 77, A115) Plaintiff testified that he was unaware of the decline in work. (D.I. 77, A92-93) Lay-offs occurred as a result in an overall reduction in force. Plaintiff was one of those employees affected by the reduction in force and was laid off on April 8, 2002. (D.I. 77, A6, A225) Plaintiff's termination papers indicate his was an involuntary termination due to reduction in force and lack of work. (D.I. 90, Ex. 31) Plaintiff disputes his lay-off was due to a reduction in force. He testified that he was the most experienced engineer in his group. (D.I. 77, A93) Conversely, defendant states that, in peer ranking, plaintiff was ranked the lowest and selected for the April reduction in force. (D.I. 90, Ex. 40) It notes that two white male design engineers were laid off during this time period. (D.I. 77, A115)

#### b. Race/National Origin Discrimination

Plaintiff alleges race discrimination and failure to promote due to race discrimination. More particularly, he alleges that he did not receive the raises to which he was entitled, defendant's employees made fun of him and laughed at his accent, he was suspended for misconduct when other employees were not, he was denied educational opportunities, and he was demoted and discharged, all as a result of his race and national origin.

In direct evidence cases, the employee alleging discrimination must produce "direct evidence that decisionmakers placed substantial negative reliance on an

-18-

illegitimate criterion in reaching their decision." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989); see also Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1097 (3d Cir. 1995). If the employee produces direct evidence of discriminatory animus, the employer must then produce evidence sufficient to show that it would have made the same decision if the illegal bias had played no role in the employment decision. See Price Waterhouse, 490 U.S. at 244-45; see also Starceski, 54 F.3d at 1096. In order to shift the burden, plaintiff must produce evidence that is "so revealing of discriminatory animus that it is not necessary to rely upon any presumption from the prima facie case . . . ." Armbruster v. Unisys Corp., 32 F.3d 768, 778 (3d Cir. 1994). "Stray remarks in the workplace, statements by nondecisionmakers, or even statements by decisionmakers unrelated to the decisional process itself, do not constitute direct evidence of discrimination." Fakete v. Aetna, Inc., 152 F. Supp. 2d 722, 733 (E.D. Pa. 2001) (citing Starceski, 54 F.3d at 1096)); see also Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

When a plaintiff does not present direct evidence of discriminatory animus, courts analyze a plaintiff's claims pursuant to a pretext theory of discrimination. In Title VII employment discrimination actions invoking the pretext theory of discrimination, courts apply the McDonnell Douglas burden shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Pursuant to McDonnell Douglas, a plaintiff has the initial burden to establish a prima facie case of discrimination. Id. at 802. To establish a prima facie case of discrimination, plaintiff must provide evidence that: (1) he was a

member of a protected class; (2) he was qualified for the position(s) applied for; and (3) another person outside of the protected class was treated more favorably.

Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006) (citing McDonnell Douglas, 411 U.S. 792 at 802-03). If plaintiff succeeds in establishing his prima facie case, the burden shifts to defendant employer to proffer "legitimate non-discriminatory" reason for its actions. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997). If defendant meets this burden, the burden again shifts to plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. Id. at 804. To do this, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). If a defendant carries this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendant's proffered reasons to permit a reasonable fact finder to conclude that the reasons are fabricated. See Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1072 (3d Cir. 1996) (en banc).

Although plaintiff has identified indicia of discrimination, he has failed to identify direct evidence that "decisionmakers placed substantial negative reliance on [such] illegitimate criterion in making their decision." Price Waterhouse, 440 U.S. at 277. However, plaintiff has met his initial burden to establish a prima facie case of discrimination. Defendant, in turn, has rebutted plaintiff's evidence with respect to his prima facie case of discrimination. For example, defendant indicates that plaintiff's

performance was not a high level of efficiency; hence a lower salary raise. Defendant conducted an internal interview and found no evidence that its employees laughed at, or made fun of, plaintiff's accent. Defendant submitted evidence that, like plaintiff, a white co-worker was suspended for making excessive personal telephone calls. Defendant submitted evidence that plaintiff received more training than other employees in his group. Defendant proffered an explanation to plaintiff's charge that he was demoted. The organizational chart contained an error, the error was explained to plaintiff, and the chart was later corrected. Finally, defendant explained that plaintiff was laid off during the reduction in work force because he was ranked lowest in peer ranking. Genuine issues of material fact remain. Under a burden shifting theory, a reasonable jury could find that defendant proffered a "legitimate non-discriminatory" reason for its actions. Accordingly, the court will deny plaintiff's motion for summary judgment.

### c. Retaliation

A plaintiff claiming retaliation must first establish a prima facie case under Title VII.[7] To establish a prima facie case, plaintiff must demonstrate, by a preponderance of the evidence, that: (1) he engaged in a protected activity;[8] (2) the defendant took

---

[7]The anti-retaliation section of Title VII provides: It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3a.

[8]Title VII defines a "protected activity" as an instance when an employee has opposed any practice made an unlawful employment practice by this subchapter, or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

-21-

adverse employment action against him; and (3) a causal link exists between the protected activity and the adverse action. See Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1999). Once a plaintiff has established a prima facie case, the defendant has the opportunity to set forth, through the introduction of admissible evidence, reasons for its actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the motivating force behind the adverse employment action. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). If the defendant successfully rebuts the plaintiff's prima facie showing, the presumption of discrimination drops from the case, and plaintiff must present sufficient evidence for a reasonable factfinder to conclude "that the proffered reason was not the true reason for the employment decision." Id. at 256; see also Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997).

Here, plaintiff engaged in a protected activity when he complained to Weiss about the conduct of Welch, his supervisor. Shortly thereafter, plaintiff was involved in a serious automobile accident and remained off work for several months before returning part-time. A few months following his return to work, plaintiff was one of the workers laid off, and the only worker of color. Accordingly, the court finds that plaintiff has established a prima facie case of retaliation. Defendant's documentation indicates, however, that plaintiff was laid off due to a reduction in work force as a result of lack of work. It is not within the court's purview to second guess defendant's decision. "The question is not whether the employer made the best or even sound business decision; it is whether the real reason is discrimination." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (1997). Genuine issues of material fact remain. Based upon the

record before the court, a reasonable jury could find that plaintiff was terminated solely because of a reduction in work force. Accordingly, the court will deny plaintiff's motion for summary judgment on the issue of retaliation.

## IV. CONCLUSION

Based upon the foregoing analysis, the court will deny plaintiff's motions for default judgment and motion for extension of time. The court will grant in part and deny in part plaintiff's motion to compel. The court will grant defendant's motion to quash. The court will grant defendant's motion for partial summary judgment as to count four and on the damages issues of back pay and front pay. The court will deny plaintiff's motion for summary judgment. An appropriate order will issue.

-23-